QUINN EMANUEL URQUHART & SULLIVAN, LLP
David M. Grable (Bar No. 237765)
davegrable@quinnemanuel.com
865 South Figueroa Street, 10th Floor
Los Angeles, CA 90017
Telephone:   (213) 443-3000
Facsimile:    (213) 443-3100

Brian E. Mack (Bar No. 275086)
brianmack@quinnemanuel.com
Kevin L. Jones (Bar No. 324068)
kevinjones@quinnemanuel.com
50 California St, 22nd Floor
San Francisco, CA 94111
Telephone:   (415) 875-6600
Facsimile:    (415) 875-6700

*Attorneys for Ripple Labs Inc.*

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| COOPERATIVE ENTERTAINMENT, INC., | Case No. 3:19-cv-06025-VC |
| Plaintiff, | **RIPPLE LABS INC.'S MOTION TO DISMISS THE COMPLAINT FOR FAILURE TO STATE A CLAIM AND MEMORANDUM OF POINTS AND AUTHORITIES** |
| vs. | |
| RIPPLE LABS INC., | |
| Defendant. | Date:       February 13, 2020<br>Time:      10:00 a.m.<br>Place:      450 Golden Gate Avenue<br>               San Francisco, CA 94102<br>Judge:     Hon. Vince Chhabria<br>Courtroom: 4 |

**NOTICE OF MOTION AND MOTION**

PLEASE TAKE NOTICE that on February 13, 2020, at 10:00 a.m., or as soon thereafter as the matter may be heard, in Courtroom 4 of the United States District Court for the Northern District of California located at 450 Golden Gate Avenue, San Francisco, California 94102, before the Honorable Judge Vince Chhabria, Defendant Ripple Labs Inc. ("Ripple") will, and hereby does, bring this Motion to Dismiss Cooperative Entertainment, Inc.'s ("CEI" or "Plaintiff") Complaint for failure to state a claim.

**RELIEF REQUESTED**

Ripple seeks an order dismissing the Complaint filed by Plaintiff CEI on two grounds. First, pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, Ripple moves to dismiss the Complaint on the ground that the claims of U.S. Patent No. 9,432,452 (the "'452 Patent" or "Patent-in-Suit") are directed to patent-ineligible subject matter. Second, Ripple moves to dismiss the Complaint on the ground that its barebones, conclusory allegations of direct infringement fail to state a claim pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure. This motion is based on this Notice of Motion and Motion, the Memorandum of Points and Authorities, and such further evidence and argument as may be submitted prior to or at the hearing before this Court.

DATED: January 9, 2020

Respectfully submitted,

QUINN EMANUEL URQUHART & SULLIVAN, LLP

By  */s/ David M. Grable*
David M. Grable
*Attorneys for Ripple Labs Inc.*

# **TABLE OF CONTENTS**

Page

NOTICE OF MOTION AND MOTION ..................................................................................1

RELIEF REQUESTED ...............................................................................................................1

MEMORANDUM OF POINTS AND AUTHORITIES ...........................................................1

I. STATEMENT OF ISSUES TO BE DECIDED............................................................1

II. INTRODUCTION............................................................................................................1

III. RELEVANT FACTUAL BACKGROUND ..................................................................2

IV. LEGAL STANDARD .....................................................................................................2

    A. Patent Eligibility Under 35 U.S.C. § 101 ............................................................2

    B. Sufficiency of Infringement Allegations..............................................................4

V. ARGUMENT ...................................................................................................................4

    A. The '452 Patent Is Invalid Because It Claims Patent-Ineligible Subject Matter ......................................................................................................................4

        1. The '452 Patent Is Directed to an Abstract Idea ............................................5

        2. The '452 Patent Lacks an Inventive Concept.................................................7

            (a) P2P Content Delivery Using CDNs and Content Segmentation Does Not Add an Inventive Concept......................................................7

            (b) The Claim Limitations Were Well-Known, Conventional, and Routine ......................................................................................................8

        3. *Berkheimer* Does Not Bar an Early Section 101 Determination....................9

    B. The Complaint's Bald Assertions that Ripple Directly Infringes Upon CEI's Patent-in-Suit Fails to State a Claim ........................................................10

VI. CONCLUSION ..............................................................................................................13

# TABLE OF AUTHORITIES

**Page**

**Cases**

*Affinity Labs of Tex., LLC v. Amazon.com, Inc.*,
    838 F.3d 1266, 1272 (Fed. Cir. 2016) .................................................................................. 8

*Alice Corp. Pty. Ltd. v. CLS Bank Int'l*,
    134 S. Ct. 2347 (2014) ......................................................................................................... 3

*AlterG, Inc. v. Boost Treadmills LLC*,
    388 F. Supp. 1133 (N.D. Cal. 2019) .................................................................................. 10

*Ashcroft v. Iqbal*,
    556 U.S. 662 (2009) ............................................................................................... 4, 10, 12

*Atlas IP LLC v. Pac. Gas & Elec. Co.*,
    No. 15-cv-05469-EDL, 2016 WL 1719545 (N.D. Cal. Mar. 9, 2016) ............................ 4, 10

*BASCOM Global Internet Servs., Inc. v. AT&T Mobility LLC*,
    827 F.3d 1341 (2016) .......................................................................................................... 6

*Baseball Quick, LLC v. MLB Advanced Media L.P.*,
    No. 11-CV-1735 KBF, 2014 WL 6850965 (S.D.N.Y. Dec. 4, 2014) ................................ 12

*Bell Atlantic v. Twombly*,
    550 U.S. 544 (2007) ......................................................................................... 4, 9, 10, 12

*Berkheimer v. HP Inc.*,
    881 F.3d 1360 (Fed. Cir. 2018) ........................................................................................... 9

*Big Baboon, Inc. v. SAP America, Inc.*,
    No. 17-cv-02082-HSG, 2018 WL 1400443 (N.D. Cal. Mar. 20, 2018) ............................ 11

*Bilski v. Kappos*,
    561 U.S. 593 (2010) ......................................................................................................... 2, 9

*Blizzard Ent., Inc. v. Lilith Games (Shanghai) Co. Ltd.*,
    149 F. Supp. 3d 1167 (N.D. Cal. 2015) .............................................................................. 4

*Boom! Payments, Inc. v. Stripe, Inc., et al.*,
    No. 19-cv-00590-VC (N.D. Cal. November 19, 2019) ....................................................... 3

*Bridge & Post, Inc. v. Verizon Commc'ns, Inc.*,
    778 F. App'x 882 (Fed. Cir. 2019) ...................................................................................... 8

*Comcast Cable, LLC v. OpenTV, Inc.*,
    319 F.R.D. 269 (N.D. Cal. 2017) ........................................................................... 10, 11, 12

*Conservation Force v. Salazar*,
    646 F.3d 1240 (9th Cir. 2011) ............................................................................................. 4

*Content Extraction and Transmission LLC v. Wells Fargo Bank, Nat. Ass'n*,
    776 F.3d 1343 (Fed. Cir. 2014) ................................................................................... 3, 5, 6

*Digital Corp. v. iBaby Labs, Inc.*,
    No. 15-cv-05790-JST, 2016 WL 4427209 (N.D. Cal. Aug. 22, 2016) ........................ 10, 13

*Digital Media Techs., Inc v. Hulu, LLC*,
    No. 4:16-cv-245, 2017 WL 4750705 (N.D. Fla. July 3, 2017) ............................................ 8

*Easyweb Innovations, LLC v. Twitter, Inc.*,
    No. 11-cv-4550-JFB-SIL, 2016 WL 1253674 (E.D.N.Y. Mar. 30, 2016) ........................... 6

*Electric Power Group, LLC v. Alstom S.A.*,
   830 F.3d 1350 (Fed. Cir. 2016) ............................................................................... 5, 6, 7

*Enfish, LLC v. Microsoft Corp.*,
   822 F.3d 1327 (Fed. Cir. 2016) ...................................................................................... 5, 7

*Front Row Techs., LLC v. NBA Media Ventures, LLC*,
   204 F. Supp. 3d 1190 (D.N.M. Aug. 30, 2016) .................................................................. 8

*Grecia v. VUDU, Inc.*,
   No. C-14-1220-EMC consolidated with Lead Case No. C-14-0775-EMC, 2015 WL
   538486 (N.D. Cal. Feb. 9, 2015) ..................................................................................... 10

*In re Greenstein*,
   774 F. App'x 661 (Fed. Cir. 2019) .................................................................................... 8

*Intellectual Ventures I LLC v. Capital One Financial Corp.*,
   850 F.3d 1332 (Fed. Cir. 2017) ........................................................................................ 6

*Intellectual Ventures I LLC v. Erie Indemnity Co.*,
   850 F.3d 1315 (Fed. Cir. 2017) ........................................................................................ 2

*Intellectual Ventures I LLC v. Symantec Corp.*,
   838 F.3d 1307 (Fed. Cir. 2016) ........................................................................................ 6

*Internet Patents v. Active Network*,
   790 F.3d 1343 (Fed. Cir. 2015) ............................................................................... 5, 6, 7

*Laitram Corp. v. Rexnord Inc.*,
   939 F.2d 1533 (Fed. Cir. 1991) ....................................................................................... 10

*Limelight Networks, Inc. v. Akamai Techs., Inc.*,
   572 U.S. 915 (2014) ........................................................................................................ 7

*MACOM Tech. Solns. Holdings, Inc. v. Infineon Tech. AG*,
   No. 16-cv-02859-CAS, 2017 WL 3449596 (June 5, 2017) ...................................... 12, 13

*Mayo Collaborative Servs. v. Prometheus Labs., Inc.*,
   566 U.S. 66 (2012) ................................................................................................... 3, 4, 7

*Orostream LLC v. Actiontec Electronics, Inc.*,
   No. 19-cv-01607-VC (N.D. Cal. August 2, 2019) ............................................................ 3

*Palmer Hamilton, LLC v. AmTab Mfg. Corp.*,
   No. 16-cv-522-JDP, 2016 WL 6775458 (W.D. Wis. Nov. 15, 2016) ............................. 12

*Personalized Media Commc'ns., LLC v. Amazon.com, Inc.*,
   161 F. Supp. 3d 325 (D. Del. Aug. 10, 2015) ................................................................... 9

*SAP Am., Inc. v. Investpic, LLC*,
   898 F.3d 1161 (Fed. Cir. 2018) ........................................................................................ 3

*Scripps Research Inst. v. Illumina, Inc.*,
   No. 16-cv-661 JLS-BGS, 2016 WL 6834024 (S.D. Cal. Nov. 21, 2016) ....................... 10

*Synopsys, Inc. v. Mentor Graphics Corp.*,
   839 F.3d 1138 (Fed. Cir. 2016) ..................................................................................... 8, 9

*Two-Way Media Ltd. v. Comcast Cable Commc'ns, LLC*,
   874 F.3d 1329 (Fed. Cir. 2017) ........................................................................................ 5

*Ultramercial, Inc. v. Hulu, LLC*,
   772 F.3d 709 (Fed. Cir. 2014) ...................................................................................... 2, 3

*Uniloc USA, Inc. v. HTC Am., Inc.*,
   No. C17-1558, 2018 WL 3008870 (W.D. Wash. June 15, 2018) .................................... 3

*Walker Digital, LLC v. Google, Inc.*,
  66 F. Supp. 3d 501 (D. Del. 2014) .................................................................................... 8
*Warner-Jenkinson Co. v. Hilton Davis Chem. Co.*,
  520 U.S. 17 (1997) ............................................................................................................ 10

**Statutory Authorities**

35 U.S.C. § 101 ............................................................................................................ 2, 3, 4

**Rules and Regulations**

Fed. R. Civ. P. 8(a)(2) ........................................................................................................ 4
Fed. R. Civ. P. 12(b)(6) ................................................................................................... 1, 4

# MEMORANDUM OF POINTS AND AUTHORITIES

## I.     STATEMENT OF ISSUES TO BE DECIDED

This motion presents the following issues for decision:

1. Should CEI's Complaint be dismissed for failure to state a claim because the '452 Patent's claims are directed to patent-ineligible subject matter?

2. Should CEI's Complaint be dismissed for failure to state a claim because CEI has pleaded only the ultimate conclusion it asks the Court to draw—*i.e.*, that Ripple directly infringes upon CEI's patents—without any factual allegations that would give rise to a plausible claim?

## II.    INTRODUCTION

Ripple respectfully requests that CEI's Complaint for direct infringement of its Patent-in-Suit be dismissed for two independent reasons.

First, CEI's allegations fail because the claims of the Patent-in-Suit are directed to an abstract idea without an inventive concept and are thus invalid.  The only claim referenced in CEI's Complaint, Claim 1, merely recites elements that are generic computer, network, or Internet components.  The claim's recitation of content distribution and segmentation in peer-to-peer ("P2P") networks adds nothing more to the underlying patent-ineligible abstract idea of the organization and delivery of data through P2P networks.  Thus, the Patent-in-Suit is directed to patent ineligible-subject matter and is invalid, warranting dismissal.

Second, CEI's allegations of infringement are legally insufficient because they are conclusory and fail to address several key claim limitations.  Although CEI's Complaint brands Ripple's RippleNet service as an allegedly infringing product, merely identifying a Ripple product and alleging, in a conclusory fashion, that it infringes upon the Patent-in-Suit is insufficient to state a claim for patent infringement.  Rather, the Plaintiff must identify and explain—at an absolute minimum—how *each* specific limitation of the patent claim is practiced by the accused technology or its use.  CEI has failed to plead facts sufficient to support the inference that the accused technologies practice each claim limitation featured in the Patent-in-Suit.

//

//

### III. RELEVANT FACTUAL BACKGROUND

Ripple is a San Francisco-based financial technology company that leverages the power of blockchain technology and digital assets to make cross-border payments faster, cheaper, and more reliable. Founded in 2012, Ripple now has over 300 customers and more than 400 employees across nine global offices. According to the Complaint, CEI is a corporation organized under the laws of North Carolina with a principal place of business in Raleigh. Dkt. 1, ¶ 2. Plaintiff offers no other information regarding its business or any information regarding how it practices or uses its patent, if at all. *See id.* Indeed, the public record suggests CEI's operations consist of nothing more than filing patent infringement lawsuits.

On January 17, 2019, CEI filed suit against Peer5, Inc., a peer-to-peer content delivery network provider, alleging infringement of the '452 Patent. *See* Dkt. 1, No. 19-cv-00294-WHO (N.D. Cal. Jan. 17, 2019). That case was voluntarily dismissed by the parties on July 29, 2019. On September 25, 2019, CEI filed two more lawsuits alleging infringement of the Patent-in-Suit—one against Ripple and another against Crowd Machine, Inc. *See* Dkt. 20, Notice of Pendency of Other Action Involving Same Patent; Dkt. 1, No. 19-cv-06012-VC (N.D. Cal. Sept. 25, 2019). On December 11, 2019, CEI filed an additional lawsuit alleging infringement of the Patent-in-Suit against Wowza Media Systems, LLC. *See* Dkt. 1, No. 19-cv-02253-MN (D. Del. Dec. 11, 2019).

In the present matter, CEI alleges that "Ripple Labs has been and is directly infringing claims of the '452 patent. Ripple Labs makes, uses, sells, and offers for sale methods and services that practice and embody claims of the '452 patent—including but not limited to Ripple Labs' RippleNet service." Dkt. 1 ¶ 9.

### IV. LEGAL STANDARD

#### A. Patent Eligibility Under 35 U.S.C. § 101

Patent eligibility under 35 U.S.C. § 101 is a "threshold question" that should be answered early in a case. *Bilski v. Kappos*, 561 U.S. 593, 602 (2010); *see also Ultramercial, Inc. v. Hulu, LLC*, 772 F.3d 709, 717-18 (Fed. Cir. 2014) (Mayer, J., concurring) ("[W]hether claims meet the demands of 35 U.S.C. § 101 is a threshold question, one that must be addressed at the outset of litigation," which will have "a number of salutary effects."). In addition, patent eligibility is an issue

of law. *Intellectual Ventures I LLC v. Erie Indemnity Co.*, 850 F.3d 1315, 1319 (Fed. Cir. 2017). And "[l]ike other legal questions based on underlying facts, this question may be, and frequently has been, resolved on a Rule 12(b)(6) or (c) motion, where the undisputed facts . . . require a holding of ineligibility under the substantive standards of law." *SAP Am., Inc. v. Investpic, LLC*, 898 F.3d 1161, 1166 (Fed. Cir. 2018). Therefore, claim construction or an extensive factual record is not required before ruling on a motion to dismiss under § 101. *See Content Extraction and Transmission LLC v. Wells Fargo Bank, Nat. Ass'n*, 776 F.3d 1343, 1349 (Fed. Cir. 2014) (holding that claim construction is not a prerequisite to a validity determination under Section 101); *Ultramercial,* 772 F.3d at 719 (Mayer, J., concurring) (Section 101 can be decided without "formal claim construction" where the asserted claims disclose "no more than an abstract idea garnished with accessories") (internal quotation marks omitted).[1]

To determine patent eligibility under 35 U.S.C. §101, the Supreme Court set forth a two-step test in *Alice Corp. Pty. Ltd. v. CLS Bank Int'l*, 134 S. Ct. 2347 (2014). Under step one of *Alice*, the court must determine whether the claims at issue are directed to an abstract idea or other patent-ineligible concept. *Alice,* 134 S. Ct. at 2355. If a claim is directed to a patent-ineligible concept, the court must proceed to *Alice* step two and consider whether the claims include additional elements, *i.e.,* an inventive concept, sufficient to "'transform the nature of the claim' into a patent-eligible application." *Alice*, 134 S. Ct. at 2350 (quoting *Mayo Collaborative Servs. v. Prometheus Labs., Inc.*, 566 U.S. 66, 72-73 (2012)). An inventive concept cannot be supplied by limiting an abstract idea "to a particular technological environment" or adding "well-understood, routine, conventional activities previously known to the industry." *Id.* at 2358-59 (internal quotation marks omitted). "Simply stating that [a] claimed method and system[] were not conventional at the time of the patent application does not make it so, and the court need not credit such conclusory statements." *Uniloc USA, Inc. v. HTC Am., Inc.*, No. C17-1558, 2018 WL 3008870, at *9 (W.D. Wash. June 15, 2018). Instead, an inventive concept is "an element or combination of elements that

---

[1] Indeed, this Court has recently granted early motions to dismiss on Section 101 patent-eligibility grounds. *See* Order (Dkt. 45), *Orostream LLC v. Actiontec Electronics, Inc.*, No. 19-cv-01607-VC (N.D. Cal. August 2, 2019); Order (Dkt. 65), *Boom! Payments, Inc. v. Stripe, Inc., et al.*, No. 19-cv-00590-VC (N.D. Cal. November 19, 2019).

-3-

is 'sufficient to ensure that the patent in practice amounts to significantly more than a patent upon the [ineligible concept] itself.'" *Alice*, 134 S. Ct. at 2355 (quoting *Mayo*, 132 S. Ct. at 1294).

### B. Sufficiency of Infringement Allegations

Dismissal under Federal Rule of Civil Procedure 12(b)(6) is proper when a complaint exhibits either "the lack of a cognizable legal theory or []the absence of sufficient facts alleged under a cognizable legal theory." *Conservation Force v. Salazar*, 646 F.3d 1240, 1242 (9th Cir. 2011); *Blizzard Ent., Inc. v. Lilith Games (Shanghai) Co. Ltd.*, 149 F. Supp. 3d 1167, 1171 (N.D. Cal. 2015). A pleading that states a claim for relief must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). Satisfying this standard "requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atlantic v. Twombly*, 550 U.S. 544, 555 (2007). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. at 570). In the patent infringement context, "simply reciting some of the elements of a representative claim and then describing generally how an accused product operates, without specifically tying the operation to any asserted claim or addressing all of the claim requirements, is insufficient." *Atlas IP LLC v. Pac. Gas & Elec. Co.*, No. 15-cv-05469-EDL, 2016 WL 1719545, at *2 (N.D. Cal. Mar. 9, 2016).

## V. ARGUMENT

### A. The '452 Patent Is Invalid Because It Claims Patent-Ineligible Subject Matter

To be patent-eligible, a patent must claim a "new and useful process, machine, manufacture, or composition of matter." 35 U.S.C. § 101. "Laws of nature, natural phenomena, and abstract ideas," however, are not patentable inventions because they "are the basic tools of scientific and technological work." *Alice*, 134 S. Ct. at 2354 (internal quotation marks omitted). As the Supreme Court observed, allowing a patent holder to broadly preempt other applications of an abstract idea within a particular technological environment "might tend to impede innovation more than it would tend to promote it, thereby thwarting the primary object of the patent laws." *Id.* at 2354.

-4-
RIPPLE'S MOTION TO DISMISS CEI'S COMPLAINT

When, as here, all the claims of the patent-in-suit are substantially similar and linked to the same abstract idea, a court may make a Section 101 determination by analyzing a single "representative" claim—that is, a court need not independently address *every* claim within the patent. *See*, *e.g.*, *Content Extraction*, 776 F.3d at 1349; *Two-Way Media Ltd. v. Comcast Cable Commc'ns, LLC*, 874 F.3d 1329, 1337 (Fed. Cir. 2017) (finding patent invalid based on analysis of "representative claims").

### 1.     The '452 Patent Is Directed to an Abstract Idea

The first *Alice* step "look[s] at the 'focus' of the claims, their 'character as a whole.'" *Electric Power Group, LLC v. Alstom S.A.*, 830 F.3d 1350, 1353 (Fed. Cir. 2016) (citing *Enfish, LLC v. Microsoft Corp.*, 822 F.3d 1327, 1334 (Fed. Cir. 2016) and *Internet Patents v. Active Network*, 790 F.3d 1343, 1346 (Fed. Cir. 2015) (internal quotation marks omitted)).  When viewed as a whole, Claim 1 of the '452 Patent is directed to the abstract idea of the organization of the delivery of data through a P2P network.  Claim 1, the only claim referenced in the Complaint and alleged to be infringed is representative of other claims in the patent:

> 1. A system for virtualized computing peer-based content sharing comprising:
> [a] at least one content delivery server computer constructed and configured for electrical connection and communication via at least one communications network; and at least one peer-to-peer (P2P) dynamic network including a multiplicity of peer nodes, wherein the multiplicity of peer nodes consume the same content within a predetermined time, wherein the multiplicity of peer nodes are constructed and configured for electronic communication over the at least one P2P dynamic network, wherein the at least one P2P dynamic network is based on at least one trace route;
> [b] wherein the multiplicity of peer nodes is distributed outside controlled networks and/or content distribution networks (CDNs) that are included within the at least one communications network;
> [c] wherein the at least one content delivery server computer is operable to store viewer information, check content request, use the trace route to segment requested content, find peers, and return client-block pairs;
> [d] wherein distribution of P2P content delivery over the at least one P2P dynamic network is based on content segmentation; wherein content segmentation is based on CDN address resolution, trace route to CDN and P2P server manager, dynamic feedback from peers reporting traffic rates between individual peer and its neighbors, round-robin and other server side scheduling/resource allocation techniques.

Dkt. 1, Ex. A, 10:25-54.  Claim 1 only includes elements that the patent specification acknowledges are generic computer, network, or Internet components: (1) a content delivery server, (2) a communications network, and (3) a peer-to-peer (P2P) dynamic network.  *See* Dkt. 1, Ex. A,

at 1:17-37, 1:49-55 (describing various prior art live streaming services delivered over CDNs using packet-switched networks containing web and media servers); 1:22-32, 2:29-39 (describing various prior art dynamic P2P networks). Claim 1 essentially recites nothing more than content delivery over well-known P2P networks that use a technique known as "content segmentation," which was a well-understood, routine, and conventional technique for organizing content to be distributed over P2P networks. *Id.* at 2:29-39 (describing prior art systems and methods for optimizing both content segment downloads in P2P networks and reassembly of the content segments).

Such content distribution and segmentation in P2P networks is nothing more than the organization of the delivery of data through a network—an abstract idea that has long been held to be patent-ineligible. "[C]ourts have previously found that patents involving the transformation and transmission of information in one form or another form constituted abstract ideas." *Easyweb Innovations, LLC v. Twitter, Inc.*, No. 11-cv-4550-JFB-SIL, 2016 WL 1253674, at *28 (E.D.N.Y. Mar. 30, 2016) (citing *Content Extraction*, 776 F.3d at 1347; *see also Intellectual Ventures I LLC v. Symantec Corp.*, 838 F.3d 1307, 1313 (Fed. Cir. 2016) (finding the receipt of e-mail (and other data file) identifiers, characterizing e-mail based on the identifiers, and communicating the characterization (*i.e.*, filtering files/e-mail) to be abstract ideas).

The claims of the '452 Patent also resemble claims recently held invalid as directed to an abstract idea. In *BASCOM Global Internet Servs., Inc. v. AT&T Mobility LLC*, the Federal Circuit held that a claim to a "content filtering system for filtering content retrieved from an Internet computer network[, *e.g.*, to prevent users from accessing certain websites] . . . is [directed to] an abstract idea." 827 F.3d 1341, 1348 (2016). And in *Content Extraction*, 776 F.3d at 1347, the Federal Circuit found that the asserted patents were "drawn to the abstract idea of 1) collecting data, 2) recognizing certain data within the collected data set, and 3) storing that recognized data in a memory." *See also Intellectual Ventures I LLC v. Capital One Financial Corp.*, 850 F.3d 1332, 1340 (Fed. Cir. 2017); *Electric Power Group, LLC v. Alstom S.A.*, 830 F.3d 1350, 1353-54 (Fed. Cir. 2016). Here too the claims of the '452 Patent are directed to the mere distribution of content over a network and are thus directed to an abstract idea.

### 2. The '452 Patent Lacks an Inventive Concept

The second *Alice* step "look[s] more precisely at what the claim elements add—specifically, whether . . . they identify an 'inventive concept' in the application of the ineligible matter to which (by assumption at stage two) the claim is directed." *Electric Power Group*, 830 F.3d at 1353 (citing *Enfish*, 822 F.3d at 1334 and *Internet Patents*, 790 F.3d at 1346 (internal quotation marks omitted)). This step asks whether the claims "'transform the nature of the claim' into a patent-eligible application." *Alice*, 134 S. Ct. at 2350 (quoting *Mayo*, 566 U.S. at 72-73). The answer here is no. The claims of the '452 Patent fails to provide an inventive concept beyond the abstract idea identified above.

#### (a) P2P Content Delivery Using CDNs and Content Segmentation Does Not Add an Inventive Concept

In 2014, the U.S. Supreme Court handed down its seminal decision regarding divided infringement in *Limelight Networks, Inc. v. Akamai Techs., Inc.* 572 U.S. 915, 915 (2014). The patent at issue in *Limelight*, U.S. Patent No. 6,108,703 ("the '703 Patent"), was filed in May 1999, ***over 13 years before the '452 Patent was filed***, and claimed a method of delivering electronic data using a content delivery network (CDN) with a distributed hosting framework. *See* '703 Patent at Abstract. As the Patent-in-Suit itself acknowledges, in a section entitled "Description of the Prior Art," "[g]enerally, it is known in the relevant prior art to provide peer-to-peer (P2P) networks via the internet for sharing digital content, including video, for live streaming service over content distribution networks (CDNs)." Dkt. 1, Ex. A, at 1:16-20. There can be no doubt, therefore, that live streaming services using P2P networks and distributed CDNs were neither new nor inventive as of the filing date of the '452 Patent.

Content segmentation, where content is broken up into smaller pieces for transmission and reassembled by the recipient, also does not add any inventive concept to the underlying abstract idea. The '452 Patent, in the same description of the prior art section, admits that systems and methods existed for "redistribut[ing] said content segments among the client devices to seek an optimal content segment configuration of said content segments for optimizing performance characteristics of content reassembly procedures." *Id.*, 2:29-39. The claims of the '452 Patent

therefore recite the bare abstract idea of the organization and delivery of data through P2P networks. Even if there were something novel recited in the claims of the '452 Patent, the claims would still be directed to a patent-ineligible abstract idea. *Bridge & Post, Inc. v. Verizon Commc'ns, Inc.*, 778 F. App'x 882, 892 (Fed. Cir. 2019) ("Where a claim's essential advance is abstract, a novel method of performing that advance does not avoid the problem of abstractness."); *In re Greenstein*, 774 F. App'x 661, 665 (Fed. Cir. 2019) (rejecting an argument that "confuses eligibility with novelty" and explaining that "the alleged novelty of Greenstein's investment strategy—an abstract idea—is immaterial to the claims' eligibility"); *Synopsys, Inc. v. Mentor Graphics Corp.*, 839 F.3d 1138, 1151 (Fed. Cir. 2016) ("A claim for a *new* abstract idea is still an abstract idea.").

### (b)   The Claim Limitations Were Well-Known, Conventional, and Routine

There is nothing additional in the claims that amounts to significantly more than the underlying abstract idea.[2]  First, it is a well-known, routine, and conventional activity for a client device to receive and playback requested content over a network. *Affinity Labs of Tex., LLC v. Amazon.com, Inc.*, 838 F.3d 1266, 1268, 1272 (Fed. Cir. 2016) (affirming that the claims are patent-ineligible where they claim "the general concept of streaming user-selected content to a portable device," *i.e.*, "delivering selectable media content and subsequently playing the selected content on a portable device").  Second, courts have consistently held that it is not inventive to add generic computer components, such as a server or a network. *Alice*, 134 S. Ct. at 2357-58 ("[T]he mere recitation of a generic computer cannot transform a patent-ineligible abstract idea into a patent-eligible invention."); *Front Row Techs., LLC v. NBA Media Ventures, LLC*, 204 F. Supp. 3d 1190, 1280 (D.N.M. Aug. 30, 2016) ("[G]eneric computer components do not satisfy the inventive concept requirement."); *Walker Digital, LLC v. Google, Inc.*, 66 F. Supp. 3d 501, 511 (D. Del. 2014) (holding that "generic computer components (processor, memory) to implement the abstract idea" did not save the claims).  Third, a server getting a request for content from a client device and sending a file to a client device are well-known, routine, and conventional activities. *Digital Media*

---

[2]  As discussed above, the patent background already acknowledges that P2P content sharing using CDNs and content segmentation were well known at the time of the '452 Patent.

-8-
RIPPLE'S MOTION TO DISMISS CEI'S COMPLAINT

*Techs., Inc v. Hulu, LLC*, No. 4:16-cv-245, 2017 WL 4750705, at *5 (N.D. Fla. July 3, 2017) ("[I]t is nothing new for servers and clients to send requests to each other."). Therefore, there is nothing additional that, in practice, would amount to significantly more than the abstract idea.

Also, it is irrelevant to the Section 101 analysis that the claims are directed to applications where the same content is "consumed" by the peer nodes within a predetermined time, as would be the case with the alleged invention applied to streaming content or live video. As courts have consistently found, such "field of use" limitations (where the claims are applied to a specific application or field) do not transform a patent-ineligible claim into an eligible claim. *Personalized Media Commc'ns., LLC v. Amazon.com, Inc.*, 161 F. Supp. 3d 325, 333 (D. Del. Aug. 10, 2015) ("[I]t is irrelevant to the § 101 analysis that decryption is used to protect programming content; field of use limitations cannot render a claim patent eligible."); *Bilski v. Kappos*, 561 U.S. 593, 612 (2010) ("[L]imiting an abstract idea to one field of use or adding token postsolution components [does] not make the concept patentable.").

### 3. *Berkheimer* Does Not Bar an Early Section 101 Determination

Because, as shown above, the determination of patent invalidity of the '452 Patent under Section 101 does not rely on genuinely disputed questions of fact, resolution at the motion-to-dismiss stage is appropriate. *Berkheimer v. HP Inc.*, 881 F.3d 1360, 1368 (Fed. Cir. 2018) (observing that "not every § 101 determination contains genuine disputes over the underlying facts material to the § 101 inquiry," and explaining that "nothing in this decision should be viewed as casting doubt on the propriety of . . . cases" resolving patent eligibility on motions to dismiss). To the extent CEI argues that factual allegations in the Complaint preclude dismissal, the allegations are merely legal conclusions or irrelevant to the Section 101 analysis. This Court is not bound by Plaintiff's assertion that the claims recite a patent-eligible application of an underlying abstract idea. *Twombly,* 550 U.S. at 555 ("[C]ourts are not bound to accept as true a legal conclusion couched as a factual allegation."); *Bridge & Post*, 778 F. App'x at 892; *In re Greenstein*, 774 F. App'x at 665; *Synopsys*, 839 F.3d at 1151.

//
//

### B. The Complaint's Bald Assertions that Ripple Directly Infringes Upon CEI's Patent-in-Suit Fails to State a Claim

In the patent infringement context, "simply reciting some of the elements of a representative claim and then describing generally how an accused product operates, without specifically tying the operation to any asserted claim or addressing all of the claim requirements, is insufficient." *Atlas IP LLC*, 2016 WL 1719545, at *2. In order "[t]o prove direct infringement, the patentee must show that the accused [product] reads on each claim limitation." *Grecia v. VUDU, Inc.*, No. C-14-1220-EMC consolidated with Lead Case No. C-14-0775-EMC, 2015 WL 538486, at *3 (N.D. Cal. Feb. 9, 2015) (citing *Warner-Jenkinson Co. v. Hilton Davis Chem. Co.*, 520 U.S. 17, 40 (1997)). A direct infringement claim does not satisfy the standard under *Iqbal* and *Twombly* unless a plaintiff has alleged sufficient facts to show how the accused products practice each of the limitations found in at least one asserted claim. *AlterG, Inc. v. Boost Treadmills LLC*, 388 F. Supp. 1133, 1143 (N.D. Cal. 2019); *see Digital Corp. v. iBaby Labs, Inc.*, No. 15-cv-05790-JST, 2016 WL 4427209, at *3-4 (N.D. Cal. Aug. 22, 2016) (dismissing direct infringement claim where plaintiff failed to allege facts showing that the accused products practiced *all* limitations of an exemplary asserted claim); *Scripps Research Inst. v. Illumina, Inc.*, No. 16-cv-661 JLS-BGS, 2016 WL 6834024, at *6 (S.D. Cal. Nov. 21, 2016) (dismissing infringement claim where allegations did not explain how the accused product met the claim limitations). This pleading requirement "is animated by the principle that the failure to meet a single limitation is sufficient to negate infringement of a claim." *AlterG, Inc. v. Boost Treadmills LLC*, 388 F. Supp. at 1143 (internal quotation marks omitted) (citing *Laitram Corp. v. Rexnord Inc.*, 939 F.2d 1533, 1535 (Fed. Cir. 1991).

The allegations in CEI's Complaint plainly fail to plead a plausible infringement claim under *Iqbal* and *Twombly*. *See*, *e.g.*, *Comcast Cable, LLC v. OpenTV, Inc.*, 319 F.R.D. 269, 274 (N.D. Cal. 2017) ("Comcast knows how its own products and services work and can easily show in its pleadings how, specifically, a single claim limitation is absent from each accused product or service. It must comply fully with the requirements of *Twombly*/*Iqbal* as to all counts[.]"). Here, the Complaint fails because the accused technologies—a software and service package for cross-border payments and an open-source, distributed ledger—are entirely unrelated to the Patent-in-Suit, which

concerns sharing media files in order to optimize playback. *See* Dkt. 1, Ex. A., at 5:11-14 ("[T]he embodiments of the present invention described herein assume the use of existing audio and/or video playback."). Consequently, because the accused technologies[3] are not involved in the sharing of media files or other media content, they practice few—if any—of the limitations of the Patent-in-Suit. Failure to show that the accused technologies practice *one* of the limitations—let alone several limitations—requires dismissal of Plaintiff's infringement claim. *See AlterG, Inc.*, 388 F. Supp. at 1143.

CEI fails to plead facts sufficient to show that the accused technologies practice all claim limitations included in Claim 1, particularly with respect to limitations that relate to sharing media files. Without pleading sufficient facts to establish that the accused technologies practice *all* limitations, CEI's infringement claim necessarily fails. *See id.* First, Claim 1 requires that "at least one content delivery server is operable to store viewer information [and] check content request." Dkt. 1 ¶ 10(d), Ex. A, at 10:42-45. CEI claims that the accused technologies include "both tracking nodes and validating nodes, which store viewer information, check content request, and use the trace route to segment requested content, find peers, and return client-block pairs." *Id.* ¶ 10(d). However, Plaintiff fails to plead any facts relating to "viewer information" involved in the accused products because ***no viewers exist***. Indeed, the website[4] CEI incorporates by reference never mentions the terms "viewer" or "viewer information." *See id.* Second, Claim 1 requires "the multiplicity of peer nodes consume the same content within a predetermined time." *Id.*, Ex. A, at 10:31-33. However, Plaintiff's Complaint conspicuously lacks any mention of this limitation requiring "a predetermined time." *See id.* ¶ 10(a-e). And for good reason—neither RippleNet nor the XRP Ledger contain any

---

[3] The Complaint erroneously conflates RippleNet with the XRP Ledger, and appears to suggest that they are one interchangeable technology, which they are not. Plaintiff's muddled use of the terms "RippleNet" and "XRP Ledger" is akin to instances where a plaintiff indiscriminately lists a number of defendants' products in an attempt to satisfy the direct infringement pleading standard, a practice admonished by courts. *See*, *e.g.*, *Big Baboon, Inc. v. SAP America, Inc.*, No. 17-cv-02082-HSG, 2018 WL 1400443 (N.D. Cal. Mar. 20, 2018), at *4 (dismissing a complaint where plaintiff mentioned multiple products but failed to identify a specific infringing product).

[4] https://ripple.com/build/xrp-ledger-consensus-process/

audio or video content that could plausibly be "consumed" within "a predetermined time." *See id.*[5] Finally, CEI fails to allege facts showing that "at least one content delivery server" exists in the accused technologies. *See id.* ¶ 10(b). Even though CEI explains that "[s]ervers in the XRP Ledger communicate to each other using the XRP Ledger protocol[,]" CEI fails to explain what "content" is actually communicated and does not identify any content originator that could act as a "content delivery server." CEI's failure to show this limitation is practiced in the XRP Ledger is, by itself, sufficient grounds for dismissal. *See AlterG, Inc.*, 388 F. Supp. 1133, 1143 (granting the motion to dismiss a claim for direct infringement where the complaint lacked allegations that the accused products practiced a key limitation of the patents-in-suit). However, CEI fails to allege that at least three of the key limitations of the Patent-in-Suit are practiced in the accused products—its allegations of direct infringement are therefore legally insufficient, and the Complaint must be dismissed.

Further, CEI's mere reliance on Ripple's general marketing material is insufficient to state a plausible claim for infringement, especially when the accused products bear no resemblance to the Patent-in-Suit. Courts have recognized that when allegations of direct infringement are based "only upon the patent claims themselves and an image of the accused product[,]" they are not sufficient to satisfy the *Iqbal/Twombly* standard. *See Palmer Hamilton, LLC v. AmTab Mfg. Corp.*, No. 16-cv-522-JDP, 2016 WL 6775458, at *1 (W.D. Wis. Nov. 15, 2016). When "disputed pieces of technology are complex and highly technical," courts have dismissed claims that "are silent to how [the] technology functions, what innovations are protected by the Subject Patents, and how [defendant's] products infringe upon the Subject Patents' claims." *See MACOM Tech. Solns. Holdings, Inc. v. Infineon Tech. AG*, No. 16-cv-02859-CAS, 2017 WL 3449596, at *5 (June 5, 2017). In addition, "it is not enough to allege that [the] accused products have similar uses as [] the patented technology." *Id.* (citing *Baseball Quick, LLC v. MLB Advanced Media L.P.*, No. 11-CV-1735 KBF, 2014 WL 6850965, at *7 (S.D.N.Y. Dec. 4, 2014)) (reasoning that "there is more than one way to a skin a cat"). In *MACOM*, the court dismissed plaintiff's direct infringement claims

---

[5] Neither the Complaint nor the website links incorporated by reference state that RippleNet or the XRP Ledger use or distribute audio or video files.

where plaintiff solely relied on defendant's marketing materials to claim that the defendant had infringed upon plaintiff's semiconductor technology.  2017 WL 3449596, at *5.  The court noted how the plaintiff failed to explain how the accused products relate to the patent's claims in general. *Id*. ("[The patent's claim] bears no resemblance to [defendant's] product marketing at a high-level of generality.")  The plaintiff in *MACOM* only pointed out how both products used the same material.  *Id*.  Here, like the semiconductor technology in *MACOM*, the accused cross-border payments and distributed ledger technology is highly complex.  *Id.*; *See* Dkt. 1 ¶ 10.  And like the plaintiff in *MACOM*, CEI solely relies on Ripple's marketing material through selective quotation and incorporation by reference.  *Compare* 2017 WL 3449596, at *5 *to* Dkt. 1 ¶ 10.  The marketing material that CEI quotes only references one commonality with the Patent-in-Suit: both the accused technologies and the '452 Patent are alleged to have "peer nodes" and use a "peer protocol."  *Id.* Yet CEI readily admits that RippleNet's service is "[o]ne frictionless experience to send money globally[,]" which is unrelated to the "use of existing audio and/or video playback" described in the Patent-in-Suit.  Dkt. 1, Ex. A, at 5:11-14.  Aside from pointing out one common feature, CEI fails to explain ***how*** the accused technologies actually function or ***how*** they infringe.  Therefore, CEI's infringement claim is insufficient as a matter of law and warrants dismissal.  *See, e.g.*, *See AlterG, Inc.*, 388 F. Supp. at 1143; *Digital Corp.*, 2016 WL 4427209, at *3-4.

## VI.    CONCLUSION

For all of the foregoing reasons, Ripple respectfully submits that the Court should dismiss CEI's Complaint and this action in its entirety.

DATED:  January 9, 2020                    Respectfully submitted,

QUINN EMANUEL URQUHART & SULLIVAN, LLP


By  */s/ David M. Grable*
    David M. Grable
    *Attorneys for Ripple Labs Inc.*